IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CAVU/ROCK PROPERTIES | § | No. 5:14-CV-00987-RP |
| PROJECT I, LLC, | § | |
| | § | |
| DEBTOR | § | |
| _____ | | |
| GOLD STAR CONSTRUCTION, INC., | § | |
| | § | |
| APPELLANT/ | § | |
| CROSS-APPELLEE | § | |
| | § | |
| V. | § | |
| | § | |
| CAVU/ROCK PROPERTIES | § | |
| PROJECT I, LLC, | § | |
| | § | |
| APPELLEE/ | § | |
| CROSS-APPELLANT | § | |

**MEMORANDUM AND ORDER**

Cavu/Rock Properties Project I, LLC ("Cavu/Rock") is a debtor in Chapter 11 bankruptcy proceedings (the "Bankruptcy Proceeding") before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court").  Cavu/Rock brought an adversary proceeding against Gold Star Construction, Inc. ("Gold Star") seeking a judgment from the Bankruptcy Court declaring Gold Star's lien in certain real property void and disallowing Gold Star's claim in the bankruptcy proceeding (the "Adversary Proceeding").  In its Memorandum Opinion on Plaintiff's Complaint to Avoid Lien and Objection to Claim dated August 27, 2014 (the "Memorandum Opinion"), the Bankruptcy Court entered final judgment in the Adversary Proceeding, declaring Gold Star's lien invalid and its claim unsecured under 11 U.S.C. § 506.  This proceeding is an appeal from that judgment.

Before this Court are Appellant/Cross-Appellee Gold Star's Brief, filed November 5, 2014 (Clerk's Dkt. #9), Appellee/Cross-Appellant Cavu/Rock's Brief, filed January 22, 2015 (Clerk's Dkt.

#19), Appellant/Cross-Appellee Gold Star's Responsive Brief, filed February 20, 2015 (Clerk's Dkt. #24) and Appellee/Cross-Appellant Cavu/Rock's Responsive Brief, filed March 6, 2015 (Clerk's Dkt. #25).   Having carefully considered the briefs and responses, the record and applicable law, the Court concludes that the bankruptcy court's rulings and final judgment should be affirmed for the following reasons.

## FACTUAL BACKGROUND

Cavu/Rock owns a residential housing development in Bakersfield, California (the "Property").   Cavu/Rock and Gold Star entered into a development agreement dated March 25, 2008 (the Development Agreement") pursuant to which Gold Star would act as the general contractor to develop the Property.   The Development Agreement expressly provides "[N]othing in this Agreement shall be construed, deemed or interpreted by the parties or any third person to create the relationship of principal and agent or of partnership, joint venture or any other association other than that of debtor-creditor between the parties."

In accordance with the Development Agreement, Gold Star commenced construction of curbs, gutters and streets for, and built homes on, the Property.   When Cavu/Rock became delinquent in its payments under the Development Agreement, Gold Star recorded in the Official Records of Kern County, California a mechanic's lien on the Property in the amount of $1,084,950.90 (the "Mechanic's Lien").   Gold Star subsequently filed suit against Cavu/Rock in the Superior Court of the State of California, County of Kern, Metropolitan Division for breach of contract and enforcement of mechanic's lien, among other claims, which lawsuit was stayed when Cavu/Rock filed its Chapter 11 bankruptcy petition.

Gold Star filed a Proof of Claim in Cavu/Rock's bankruptcy proceeding for $753,382.29, secured by Gold Star's mechanic's lien.   Cavu/Rock brought the Adversary Proceeding seeking a judgment from the Bankruptcy Court declaring Gold Star's lien void and disallowing Gold Star's

claim.  On March 14, 2014, Cavu/Rock filed a Motion for Partial Summary Judgment asking for a finding from the Bankruptcy Court that any claim Gold Star may have against Cavu/Rock is unsecured pursuant to 11 U.S.C. § 506, which motion was granted on May 21, 2014.   Following a trial, the Bankruptcy Court issued its Memorandum Opinion on August 27, 2014, finding Gold Star's lien invalid and of no effect, and Gold Star's claim allowable albeit unsecured in the amount of $743,382.29.  Both parties appeal the Bankruptcy Court's judgment.

On appeal, Gold Star asserts the Bankruptcy Court erred by: (1) denying Gold Star's Motion to Transfer Venue; (2) failing to apply the doctrine of judicial estoppel with respect to Cavu/Rock's position on the value of the Property; (3) failing to apply the doctrine of res judicata with respect to Cavu/Rock's presentation of evidence on the value of the Property; and (4) finding Gold Star's lien to be invalid and of no effect.  Cavu/Rock asserts on appeal that the Bankruptcy Court erred in: (1) finding Gold Star holds an allowed, unsecured claim in the amount of $743,382.29; and (2) denying Cavu/Rock attorney's fees and costs.

## STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law de novo.  *Century Indem. Co. v. NGC Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000); *In the Matter of Coston*, 987 F.2d 1096, 1099 (5th Cir. 1992).  A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)(quoting *United States v. United States Gypsum, Co.*, 333 U.S. 364, 395 (1948)).

## ANALYSIS

### Gold Star's Issues on Appeal

*Motion to Transfer Venue*

Gold Star asserts on appeal the Bankruptcy Court abused its discretion by denying Gold Star's motion to transfer venue to the Eastern District of California pursuant to Federal Rule of Bankruptcy Procedure 1014 and 28 U.S.C. § 1412. Gold Star concedes venue was proper in the Western District of Texas, but argues the interests of justice and the convenience of the parties weigh heavily in favor of transferring the case to the district in which the Property is located.

Under Rule 1014, if a bankruptcy petition is filed in the proper district, the court may transfer the case to any other district if it determines transfer is in the interest of justice or convenience of the parties. FED. R. BANKR. P. 1014(a)(1). Section 1412 provides "[A] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. "The 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness . . .." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2nd Cir. 1990). A bankruptcy court's denial of a motion to transfer venue is reviewed for abuse of discretion. *Marbury-Patillo Constr. Co. Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. 1974).

On October 8, 2013, the Bankruptcy Court held a hearing on Gold Star's motion to transfer venue. The Bankruptcy Court presented on the record a thorough analysis of relevant factors, including, among other things, judicial economy and the efficient administration of the case, the proximity of creditors, debtor and witnesses, the location of assets and the necessity of ancillary administration. While acknowledging that certain factors were in Gold Star's favor, such as the location in California of the debtor's single asset, the Bankruptcy Court concluded the factors, when considered together, weighed against transferring the case. Accordingly, the Bankruptcy Court, in its discretion, denied Gold Star's motion to transfer.

4

Gold Star argues the location of Cavu/Rock's single asset in California outweighs all other considerations.  The Bankruptcy Court expressly acknowledged the significance of the Property's location in California, but concluded such factor was outweighed by the other considerations when taken together.  Moreover, when deciding whether to transfer venue for the convenience of the parties and the interest of justice, no single factor carries dispositive weight.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

Having reviewed the hearing transcript, this Court finds the Bankruptcy Court's decision to deny transfer was well within its discretion.  Accordingly, the Bankruptcy Court's denial of Gold Star's motion to transfer venue is affirmed.

### *Judicial Estoppel*

Gold Star argues the Bankruptcy Court erred in granting Cavu/Rock's Motion for Partial Summary Judgment because Cavu/Rock was judicially estopped from presenting in the Adversary Proceeding a position on the Property's valuation different from the position taken by Cavu/Rock in the Bankruptcy Proceeding, which position was accepted by the Bankruptcy Court in approving the plan of reorganization (the "Plan").

"Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).  Generally, the doctrine is applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage" in the proceeding  *Id*.  An equitable doctrine intended to protect the judicial process, judicial estoppel is "invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)(internal citations ommitted).  A bankruptcy court's decision not to apply the doctrine is reviewed for abuse of discretion.  *In re Coastal Plains*, 179 F.3d at 205 (5th Cir. 1999).  An error of law by the Bankruptcy Court with respect to judicial

estoppel constitutes an abuse of discretion. *Id.*

As a preliminary matter, it is important to distinguish between the valuation submitted by Cavu/Rock in the Bankruptcy Proceeding, which valuation was prepared in accordance with 11 U.S.C. § 1129, and the valuation presented by Cavu/Rock in the Adversary Proceeding for purposes of 11 U.S.C. § 506.

Under § 1129(a)(11), a plan of reorganization may be confirmed by a court only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." Therefore, in order to confirm a reorganization plan, a bankruptcy court must "make a specific finding that the plan, as proposed, is feasible." *In re M & S Assocs. Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992). Traditional factors considered by a bankruptcy court when determining the feasibility of a reorganization plan include: "(1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *Id.*, at 849.

On October 7, 2013, Cavu/Rock filed in the Bankruptcy Proceeding its Disclosure Statement for its Plan of Reorganization which set forth, among other things, Cavu/Rock's feasibility projections pursuant to 11 U.S.C. § 1129 (the "§ 1129 Feasibility Projections"). These projections estimated a future value of $60,000.00 to $75,000.00 for each of the 134 lots on the Property. In approving the Plan, the Bankruptcy Court accepted the § 1129 Feasibility Projections.

A valuation for purposes of 11 U.S.C. § 506, on the other hand, relates to the status of a creditor's claim as secured or unsecured. Section 506(a)(1) provides in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has

6

an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . .and is an unsecured claim to the extent the value of such creditor's interest . . .is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property. . .."

Under this provision, a "secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997).

In its Motion for Partial Summary Judgment filed March 14, 2014 in the Adversary Proceeding, Cavu/Rock asked the Bankruptcy Court to find Gold Star's claim, if any, unsecured pursuant to § 506.  Accordingly, Cavu/Rock submitted in its motion a valuation position with respect to the secured status of Gold Star's claim under § 506 (the "§ 506 Valuation").  The evidence presented by Cavu/Rock showed the Property was valued at $2,100,000.00 on February 13, 2013 and $2,600,000.00 on January 2, 2014.  Cavu/Rock argued that because the Property's total value was exceeded by the superior lien of Wells Fargo Bank, National Association ("Wells Fargo"), which lien totaled more than $6,600,000.00 in principal and interest, any claim by Gold Star would be unsecured under § 506.

On April 23, 2014, the Bankruptcy Court held a hearing on the Motion for Partial Summary Judgment and, after taking the matter under advisement, issued a ruling from the bench on May 21, 2014 granting the motion and holding any claim Gold Star may have against Cavu/Rock unsecured.

Gold Star contends the § 1129 Feasibility Projections valued the Property at more than $8,040,000.00, which is the amount realized if each of the 134 lots sold for only $60,000.00.  Gold Star argues the Bankruptcy Court's failure to judicially estop Cavu/Rock from asserting a much lower figure as the § 506 Valuation in the Adversary Proceeding was an abuse of discretion.  As these are two distinct, separate valuations required by the Bankruptcy Code for different purposes,

this Court disagrees.

A valuation for purposes of § 1129(a)(11) can be characterized as "simply a set of projections offered in support of the plan's feasibility, i.e., to demonstrate that the plan would have a 'reasonable probability' of success." *In re Heritage Highgate, Inc.*, 679 F.3d 132, 142 (3rd Cir. 2012).  The Third Circuit explained as follows:

> Such "[p]rojections regarding monies to be realized from the sale of lots over time do not equate to 'value' as of confirmation because they anticipate Debtors spending time and money to realize value at a later date.  That future value should not be credited to the secured creditor at confirmation.  A 'probability' of realizing the budget is not a certainty of its realization."

*Id*., at 143.

In its ruling, the Bankruptcy Court pointed out the § 1129 Feasibility Projections were "not a valuation of the development at the time of confirmation [of the Plan], however, but a prediction of future earnings meant to demonstrate feasibility" and that "time and money must be spent to develop many of these lots before they can be sold at the projected price."  Accordingly, the Bankruptcy Court declined to judicially estop Cavu/Rock from presenting the § 506 Valuation in the Adversary Proceeding.

This Court agrees with the reasoning of the Bankruptcy Court.  Cavu/Rock did not assume inconsistent positions by presenting different valuations for purposes of § 506 and § 1129.  These are simply two different valuations under the Bankruptcy Code.  This is not a situation where intentional self-contradiction was used as a means of obtaining an unfair advantage.  This Court finds no abuse of discretion on the part of the Bankruptcy Court in failing to apply the doctrine of judicial estoppel in this context.

### Res Judicata

Gold Star also argues the Bankruptcy Court erred in granting Cavu/Rock's Motion for Partial Summary Judgment because Cavu/Rock was barred by res judicata from asserting evidence of

a valuation for the Property different from the valuation presented in the Bankruptcy Proceeding. Gold Star contends once the Bankruptcy Court confirmed the Plan, Cavu/Rock's § 1129 Feasibility Projections became binding and the issue of valuation could not be relitigated.  *See Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992) ("It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes.")

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  For res judicata to apply, "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (internal citations omitted).  The res judicata effect of a prior judgment is a question of law reviewed by this Court de novo.  *Test Masters Educ. Servs. v. Singh* 428 F.3d 559, 571 (5th Cir. 2005).

As discussed above, a valuation for purposes of feasibility under § 1129(a)(11) is not the same as a valuation for purposes of § 506(a)(1).  Cavu/Rock did not take a position in the Bankruptcy Proceeding on valuation under § 506.  While confirmation of the Plan indicates the Bankruptcy Court's acceptance of Cavu/Rock's projections regarding feasibility, such confirmation does not constitute a final judgment regarding the value of the Property for purposes of a § 506 analysis.  As the Bankruptcy Court stated in its ruling, res judicata does not apply "because sales projections and actual value are two different things."

The issue of whether Gold Star's claim was secured or unsecured in light of Wells Fargo's superior lien was not an issue raised in the Bankruptcy Proceeding, and the Plan does not

constitute a final judgment on that issue.  Res judicata does not apply.  Accordingly, this Court finds

no error on the part of the Bankruptcy Court in not applying the doctrine.

***Invalid lien***

In its Memorandum Opinion dated August 27, 2014, the Bankruptcy Court found Gold Star's

claim to be valid, but the Mechanic's Lien to be invalid.  Gold Star asserts on appeal that the

Bankruptcy Court erred in its holding with respect to the Mechanic's Lien.

The issue is whether Gold Star properly recorded the Mechanic's Lien in accordance with

California law.  At the time Gold Star recorded its lien, California law provided that an original

contractor must record a mechanic's lien during the following time frame:

> after he completes the contract and before the expiration of (a) 90 days after the completion of the work of improvement as defined in Section 3106 if no notice of completion or notice of cessation has been recorded, or (b) 60 days after recordation of a notice of completion or notice of cessation.

Ca. Civ. Code § 3115 (repealed by Stats 2010 ch. 697 J 16 (SB 189), effective January 1, 2011,

operative July 1, 2012, now Cal Civ. Code § 9200).

Therefore, § 3115 establishes both the earliest date and the latest date on which a lien

claim can be timely recorded.  For a California mechanic's lien to be valid, the claim of lien must

have been recorded within this applicable statutory time period.  *Howard S. Wright Construction*

*Co. v. BBIC Investors, LLC*, 38 Cal. Rptr. 3d 769, 776 (Cal. Ct. App. 2006).

The Bankruptcy Court found that Gold Star prematurely recorded its lien claim *before*

completion of the contract, not after, and thus outside of the statutorily-mandated time frame.  A

contract is complete "for purposes of commencing the recordation period under section 3115 when

all work under the contract has been performed, excused, or otherwise discharged."  *Id*., at 779.

A party's obligations under a contract may be discharged when the other party clearly repudiates

performance of its obligations before they become due, resulting in an anticipatory breach.  *Id*., at

780.

Gold Star does not contend all work under the Development Agreement was performed. Rather, Gold Star maintains Cavu/Rock's failure to make timely payments under the Development Agreement constituted an anticipatory breach and discharged Gold Star's obligations thereunder, therefore the contract was complete before Gold Star recorded its lien claim.

After considering the testimony and other evidence presented, the Bankruptcy Court found the following:

> The Development Agreement does not set a specific timeframe for payment. The evidence shows that Cavu Rock made significant payments to Gold Star for development costs. Cavu Rock sought to continue development and salvage its relationship with Gold Star even after Gold Star recorded its lien. Cavu Rock eventually rejected the Development Agreement through the bankruptcy proceedings, but not until long after Gold Star recorded its lien. Gold Star has not shown that it was somehow discharged of its duties under the Development Agreement by November 16, 2011.

In light of those factual findings, the Bankruptcy Court concluded the Mechanic's Lien was not valid under California law because Gold Star recorded its lien claim before completing, or otherwise being discharged from, its obligations under the Development Agreement.

Turning first to the Bankruptcy Court's findings of fact, there is sufficient evidence to support its findings that: (I) Gold Star did not complete its obligations under the Development Agreement; and (ii) Cavu/Rock did not expressly repudiate its obligations under the Development Agreement prior to Gold Star filing its lien claim. Accordingly, this Court finds no clear error in the Bankruptcy Court's factual determination that Gold Star did not complete the contract before recording its lien claim.

As for the Bankruptcy Court's conclusions of law, this Court agrees with its determination that the Mechanic's Lien is invalid. Under California Civil Code § 3115, for a mechanic's lien to be valid, it must be recorded after the lien claimant completes the contract. Since Gold Star neither completed the Development Agreement nor had its obligations thereunder otherwise discharged prior to recording its lien claim, the recording was premature. Gold Star failed to meet the

applicable statutorily-dictated time frame, and therefore the Mechanic's Lien is invalid under California law and of no effect. This Court finds the Bankruptcy Court did not err in holding the Mechanic's Lien invalid as a matter of law.

## Cavu/Rock's Issues on Appeal

### *Allowed Unsecured Claim*

Cavu/Rock contends the Bankruptcy Court's finding that Gold Star holds an allowed, unsecured claim in the amount of $743,382.29 is clearly erroneous.

With respect to the clearly erroneous standard, the Supreme Court has held:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson*, 470 U.S. at 573 (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

In its Memorandum Opinion, the Bankruptcy Court detailed the evidence it relied upon in reaching its determination, including the testimony of the parties' representatives, correspondence between the parties, bank records, cancelled checks, invoices and other financial and business records. After considering and weighing all the evidence, the Bankruptcy Court made the factual determination that Gold Star's claim is allowable, albeit unsecured, and the proper amount of said claim is $743,382.29.

Cavu/Rock argues the Bankruptcy Court's determination was clearly erroneous in light of the evidence presented. Specifically, Cavu/Rock takes exception with the Bankruptcy Court's reliance on a construction ledger submitted by Gold Star as a business record, arguing such ledger was not supported by "real" evidence and contained inaccuracies. However, the Bankruptcy Court expressly stated it confirmed the ledger's accuracy by "cross-referencing it with the invoices that Gold Star provided and the copies of checks that Cavu Rock provided." By way of contrast, when

addressing a summary of transactions presented as evidence by Cavu/Rock, the Bankruptcy Court

noted the document's accuracy could not be gauged with certainty by cross-referencing it with other

admitted evidence.

It is not for this Court to substitute its judgment for that of the Bankruptcy Court with respect

to findings of fact.  The Bankruptcy Court weighed the evidence presented by both parties and

concluded Gold Star's claim was allowable.  Having reviewed the record in its entirety, this Court

is of the opinion the Bankruptcy Court's account of the evidence is entirely plausible.  Moreover,

this Court was not "left with the definite and firm conviction a mistake has been committed" as

required under a clearly erroneous standard of review.  Therefore, this Court finds the Bankruptcy

Court's determination that Gold Star holds an allowable, unsecured claim in the amount of

$743,382.29 was not clearly erroneous.

### *Attorney's Fees and Costs*

In the Memorandum Opinion, the Bankruptcy Court ordered that each party bear its own

costs.  Cavu/Rock appeals the Bankruptcy Court's denial of attorney's fees and costs.

Federal Rule of Bankruptcy Procedure 7054, incorporating Federal Rule of Civil Procedure

54, allows courts to award attorney's fees to the prevailing party in an adversary proceeding.  The

Bankruptcy Court's decision regarding the award of attorney's fees is reviewed under an abuse of

discretion standard.  *Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536, 539 (5th Cir. 2005). The

denial of attorney's fees and costs where the party prevailed only in part is not an abuse of

discretion.  *See In re Corrugated Container Antitrust Litigation*, 756 F.2d 411, 418 (5th Cir. 1985).

Cavu/Rock sought in the Adversary Proceeding a judgment declaring Gold Star's lien in the

Property void and disallowing Gold Star's claim in the bankruptcy proceeding.  The Bankruptcy

Court declared the lien void, but found the claim allowable.  Both parties prevailed in part and lost

in part.  Ordering each party to bear its own attorney's fees and costs in such situation was not an

13

abuse of discretion.

In light of the foregoing, this Court finds the Bankruptcy Court's judgment in the Adversary Proceeding should be affirmed in all respects.

**IT IS THEREFORE ORDERED** the Bankruptcy Court's order denying Gold Star's Motion to Transfer Venue is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** the Bankruptcy Court's order granting Cavu/Rock's Motion for Partial Summary Judgment is hereby **AFFIRMED**.

**IT IS FINALLY ORDERED** the Bankruptcy Court's Memorandum Opinion on Plaintiff's Complaint to Avoid Lien and Objection to Claim dated August 27, 2014 is hereby **AFFIRMED** in all respects.

**SIGNED** on April 21, 2015.


ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE